UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-771-DJH-CHL

**LATORIA CAPRICE FISCHER,**

                                                        **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**                **Defendant.**

**REPORT AND RECOMMENDATION**

Before the Court is the Complaint of Plaintiff, Latoria Caprice Fischer ("Fischer"), challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for supplemental security income ("SSI"). (DN 1.) This case was referred to the undersigned Magistrate Judge to prepare a report and recommendation. (DN 11.) Fischer filed a Fact and Law Summary (DN 13) and a supporting memorandum (DN 12), and the Commissioner filed a Fact and Law Summary (DN 14). Therefore, this matter is ripe for review.

For the reasons stated herein, the undersigned Magistrate Judge **RECOMMENDS** that the final decision of the Commissioner be **REVERSED** and that this matter be **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for reconsideration with instructions to conduct additional proceedings to remedy the herein identified defects in the original proceedings.

**I.     FINDINGS OF FACT**

Fischer initially filed an application for SSI on August 9, 2016. (R. at 419-25.) Administrative Law Judge ("ALJ") Dwight D. Wilkerson ("Wilkerson") conducted a hearing on Fischer's application on September 27, 2018. (*Id.* at 292-322.) In a decision dated May 20, 2019, ALJ Wilkerson engaged in the five-step sequential evaluation process promulgated by the

Commissioner. (*Id.* at 273-86.) In completing this evaluation, ALJ Wilkerson made the following findings:

(1) The claimant has not engaged in substantial gainful activity since August 9, 2016, the application date. (*Id.* at 278.)

(2) The claimant has the following severe impairments: anxiety, bipolar disorder, antisocial personality disorder, substance abuse disorder and cervical degenerative disc disease. (*Id.*)

(3) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*)

(4) The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can never climb ladders or ropes or scaffolds, can only occasionally climb ramps or stairs, stoop, kneel, crouch or crawl. The claimant is also limited to occasional reaching overhead, is able to perform simple, routine, repetitive tasks in a lower-stress work environment without strict quotas or frequent changes or more than occasional superficial social interactions. The claimant should not do any work with the general public. (*Id.* at 281.)

(5) The claimant is unable to perform any past relevant work. (*Id.* at 285.)

(6) The claimant was born on May 24, 1974 and was 42 years old, which is defined as a younger individual age 18-49, on the date the application was filed. (*Id.*)

(7) The claimant has a limited education and is able to communicate in English. (*Id.*)

(8) Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled. (*Id.*)

(9) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id.*)

(10) The claimant has not been under a disability, as defined in the Social Security Act, since August 9, 2016, the date the application was filed. (*Id.* at 286.)

Fischer requested review of ALJ Wilkerson's decision by the Appeals Council, which denied her request for review on August 29, 2019. (*Id.* at 3-5, 411-18.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2020); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Fischer is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Fischer timely filed this action on October 25, 2019. (DN 1.)

## II. CONCLUSIONS OF LAW

The Social Security Act authorizes payments of SSI to persons with disabilities. *See* 42 U.S.C. §§ 1381 – 1383f. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a) (2020).

### A. Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding

that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B. Five-Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. § 416.920 (2020). In summary, the evaluation process proceeds as follows:

(1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[1] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4) Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. § 416.920(a)(4).

---

[1] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve (12) months. 20 C.F.R. § 416.909 (2020).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C. Fischer's Contentions

Fischer challenged the ALJ's determination of her RFC.[2] A claimant's RFC is "the most [a claimant] can still do despite [the claimant's] limitations . . . based on all relevant evidence in [the claimant's] case record." 20 C.F.R. § 416.945(a)(1) (2020). The RFC finding is based on a consideration of medical source statements and all other evidence, medical and non-medical, in the record. *Id.* Thus, in making the RFC finding, the ALJ must assign weight to the medical source statements in the record and consider the descriptions and observations of the claimant's limitations as a result of any impairments from the claimant and the claimant's family and friends. *Id.* § 416.945(a)(3).

Here, the ALJ found that Fischer was "able to perform simple, routine, repetitive tasks in a lower-stress work environment without strict quotas or frequent changes or more than occasional superficial social interactions." (R. at 281.) The ALJ also found that Fischer "should not do any work with the general public." (*Id.*) In making this determination, the ALJ noted Fischer's reports that "she walks off the job all the time"; "is sometimes too scared to go outside"; that her

---

[2] The undersigned presumes Fischer's Fact and Law Summary and supporting memorandum to challenge the ALJ's numerical finding No. 4, though Fischer's Fact and Law Summary did not so specify as required by the Court. *See* DN 11, at PageID # 1262 (directing Plaintiff to "set forth his/her position by an appropriate memorandum of law specifying, inter alia, *the numbered findings of the final decision* with which exception is taken and the specific errors alleged") (emphasis added).

5

impairments affect her ability to "hear, remember, complete tasks, and understand"; and that "people get on her nerves and that she cannot hold a conversation for long." (*Id.*) The ALJ found that while Fischer's reported symptoms could reasonably be caused by her impairments, Fischer's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 281-82.) The ALJ noted that Fischer had a history of mental illness; received outpatient mental health treatment for antisocial personality disorder, anxiety, and bipolar disorder; and was prescribed several psychiatric medications as a result of her psychotherapy sessions. (*Id.* at 282.) However, the ALJ emphasized the presence of evidence in the record that Fischer was frequently noncompliant with her medications and that there were "instances of illicit substance abuse." (*Id.*) The ALJ then concluded that Fischer's

> consistently intact memory and concentration, her cooperative behavior during examinations and her appropriate judgment and insight when compliant with medication and abstinent from illicit substance abuse all support a finding that she is capable of simple, routine and repetitive tasks and occasional superficial social interactions in the absence of strict quotas, frequent changes or work with the public.

(*Id.*) The ALJ assigned significant weight to the opinions of the state agency physicians, Drs. Thompson and Prout, because he found their opinions to be largely consistent with the evidence in the record he cited in support of the above quoted analysis, though he indicated that "more stringent limitations on social interaction [we]re appropriate." (*Id.* at 282-83.) The ALJ assigned little weight, limited weight, or an ever lesser amount of weight to the remaining opinion evidence in the record from both acceptable medical sources and other sources. (*Id.* at 283-84.)

Fischer argued that the ALJ erred in failing to address the reasons for her noncompliance with her medications and in failing to consider the side effects of her medications. (DN 12, at PageID # 1276-79, 1283-84.) She also argued that the ALJ improperly ascribed weight to the

opinion of Jean Stodghill, A.P.R.N. ("Stodghill"). (*Id.* at 1284-89.) The undersigned will address each of Fischer's contentions below.

### 1. Noncompliance with Treatment

Fischer argued that the ALJ erred in failing to inquire into the reasons for her noncompliance with her medications. (DN 12, at PageID # 1276-84.) Fischer relied on SSR 16-3p in support of her argument.[3] (*Id.* at 1276-77.) In assessing an individual's RFC, the ALJ must consider the subjective allegations of the claimant and make findings. 20 C.F.R. § 416.929 (2016); SSR 16-3p, 81 Fed. Reg. 14,166 (Mar. 16, 2016).[4] A claimant's statement that he or she is experiencing pain or other symptoms will not, taken alone, establish that he or she is disabled; there must be medical signs and laboratory findings that show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged. 20 C.F.R. § 416.929(a)-(b). If such an impairment exists, the ALJ will then evaluate the intensity and persistence of the claimant's symptoms in order to determine his or her capacity for work based on a consideration of all available evidence. *Id.* § 416.929(c). In doing so, the ALJ

---

[3] Though Fischer also cited to *Jones v. Colvin*, No. 3:13-cv-708-DW, 2014 WL 582787, *1 (W.D. Ky. Feb. 13, 2014), in support of her argument, the undersigned finds the same distinguishable from the present case. *Jones* relied on 20 C.F.R. §§ 404.1530, 416.930(c) and SSR 82-59, which was rescinded and replaced by SSR 18-3p, in support of its finding that the Commissioner erred by failing to inquire as to the claimant's noncompliance with medications. *Jones*, 2014 WL 582787, at *15-16. 20 C.F.R. § 416.930(a) provides that "[i]n order to get benefits, [a claimant] must follow the treatment prescribed by [his or her] physician if this treatment can restore [his or her] ability to work." 20 C.F.R. § 416.930(a) (2016). The regulation then directs that where a claimant fails to follow prescribed treatment "without a good reason," he or she will not be found disabled. *Id.* § 416.930(b). However, both the Sixth Circuit and the Social Security Administration have clarified that 20 C.F.R. § 416.930 only applies where the Commissioner has found that an individual is otherwise entitled to disability. SSR 18-3p, 83 Fed. Reg. 49,616, 49,617 (Oct. 2, 2018); *Hester v. Sec'y of Health & Human Servs.*, 886 F.2d 1315, at *3 (6th Cir. 1989) (unpublished table decision) ("Failure to follow prescribed treatment becomes a determinative issue only if the claimant's impairment is found to be disabling under steps one through five and is amenable to treatment expected to restore ability to work."); *McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990); *Strong v. Soc. Sec. Admin*, 88 F. App'x 841, 846 (6th Cir. 2004). The ALJ made no such finding here, and thus, neither *Jones* nor 20 C.F.R. § 416.930 is dispositive of the instant case.

[4] Though SSR 16-3p was originally published in the Federal Register on March 28, 2016, the Social Security Administration published a revised version on October 25, 2017, in part to update the citations therein "to reflect the revised regulations that became effective on March 27, 2017." SSR 16-3p, 82 Fed. Reg. 49,462 (Oct. 25, 2017). The instant opinion will cite to the original version of SSR 16-3p given that the revised regulations do not apply to Fischer's claim. *See Revisions to Rules Regarding Evaluation of Medical Evidence*, 82 Fed. Reg. 5,844 (Jan. 18, 2017) (noting that the final rules become effective on March 27, 2017).

will not solely consider the objective medical evidence. The ALJ will also consider a number of factors, including the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms and any treatment, other than medication, the claimant receives or has received for pain or other symptoms. *Id.* § 416.929(c)(3)(i)-(vii); SSR 16-3p, 81 Fed. Reg. at 14,169-70. A claimant's pain and other symptoms "will be determined to diminish [his or her] capacity for basic work activities . . . to the extent that [his or her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(c)(4). SSR 16-3p provides that the Social Security Administration "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p, 81 Fed. Reg. at 14,170.

Here, though the ALJ relied on Fischer's noncompliance with her medications as part of his RFC determination, he did not expressly discuss the reasons for the same in his decision. There are few references to the potential reasons for Fischer's noncompliance in the record. During the hearing, in response to a question from the ALJ regarding how often she "sees things that aren't really there," Fischer testified as follows:

| | |
|---|---|
| ALJ: | How often do you see things – I mean, I'm assuming you mean things that aren't really there? |
| Fischer: | I guess they're not there. I'm not for sure if they there or not. I seen them. |
| ALJ: | How often do you see things that aren't really there? |
| Fischer: | When I'm not taking my medicine regularly. |
| ALJ: | And why is that? |

8

| | |
|---|---|
| Fischer: | Why do I not take it? |
| ALJ: | Right. |
| Fischer: | I just don't take it, because some - - I don't know why I don't take it, but – it's so much medicine I got to take, I can't remember to take all of it. |
| ALJ: | So, if you are taking your medicine, you don't see things. |
| Fischer: | Yes, sir. |
| ALJ: | Is that right? |
| Fischer: | Yes, sir. |

(R. at 307-08.)  Fischer also testified that she received certain injections "so [she] won't forget to take her medicine." (*Id.* at 311.)  Her testimony is supported by the record. (*Id.* at 1017 (noting that Fischer was started on an injection due to both her "poor compliance" and "level of paranoia").)  The record also contains a notation that Fischer told APRN Chloe Ruth during a psychotherapy session that Fischer had been unable to take a particular medication because her insurance denied it. (*Id.* at 1142.)  The Parties point the Court to no other evidence in the record regarding the reasons for Fischer's noncompliance with her medications.  However, Fischer cited to web sources to support the proposition that "[f]ailure to take medication as prescribed is a feature of bipolar disorder, which the ALJ recognized was one of [her] severe impairments." (DN 12, at PageID # 1277.)

The Commissioner conceded that the ALJ should have inquired into the reasons for Fischer's noncompliance with her medications but argued that nonetheless, his failure to do so here was harmless error. (DN 14, at PageID # 1295.)  The Commissioner emphasized that there is no evidence in the record linking Fischer's noncompliance with her severe impairments.  The Commissioner is correct that the Sixth Circuit has held that "harmless error analysis applies to

credibility determinations in the social security disability context." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). In so finding, the Sixth Circuit indicated that the Ninth Circuit's opinion in *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) was instructive. The Sixth Circuit quoted with approval the Ninth Circuit's explanation in *Carmickle* that "[s]o long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal." *Ulman,* 693 F.3d at 714 (quoting *Carmickle*, 533 F.3d at 1152); *Carmickle*, 533 F.3d at 1162 (quoting *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004)).

Here, Fischer's noncompliance with her medications featured prominently in the ALJ's conclusion regarding her RFC and his determination that her statements regarding the limiting effects of her symptoms were inconsistent with the record. (R. at 282-83.) The ALJ noted that her history of "sustained periods of medication noncompliance" and "instances of illicit substance abuse" interrupted her treatment. (*Id.* at 282.) He then proceeded to conclude that Fischer's "intact memory and concentration, her cooperative behavior during examinations and her appropriate judgment and insight when compliant with medication and abstinent from illicit substance abuse" supported his RFC determination. (*Id.* at 282-83.) He cited to a number of medical records in support of his decision. (*Id.* at 283.)

While Fischer's medical records do not always include an express discussion of whether she was compliant with her medications, the ALJ cited to several records that included Fischer's own reports that either she believed her medications were effective or that she was taking her medication as prescribed. (*Id.* at 1007-08, 1012-14, 1044-46, 1155-57, 1079-80, 1083.) On those occasions, Fischer's insight was rated as "good" on one occasion and "fair" on a number of others.

(*Id.* at 1007-08, 1044, 1079-80, 1083.) On at least one other occasion, though the record noted that she reported taking her medications as prescribed, her provider categorized her insight as "poor"; however, her provider also noted on the same occasion that she found Fischer's denial of the use of illicit drugs questionable. (*Id.* at 1012-14.) On another occasion, Fischer reported taking her medications as prescribed, had been sober from cocaine for a month, and was attending narcotics anonymous meetings, but her provider still categorized Fischer's insight as "limited." (*Id.* at 1155-57.) On other occasions when Fischer's records contained notations that she had been off her medications for various periods, her records still contain a few notations regarding "fair" judgment (*id.* at 1033-34, 1075) but contained numerous others describing her insight as "limited" (*id.* at 1021-22, 1024-25, 1055-56, 1162-63). As to Fischer's judgment, there is at least one notation of "good" judgment that correlates with notations regarding Fischer's medication compliance. (*Id.* at 1079-80.) On several other occasions, though compliant with her medications, Fischer's judgment was labeled "marginal." (*Id.* at 1007-08, 1044, 1155-57.) On the same occasion discussed above when Fischer's provider found her denial of the use of illicit drugs questionable, Fischer's judgment was labeled as "impaired." (*Id.* at 1012-14.) When noncompliant with her medications, her judgment was described as "marginal" (*id.* at 1033-34, 1055-56, 1162-63) and "impaired" (*id.* at 1021-22, 1024-25). Though there is an overlap in the way her judgment is described regardless of her compliance with medications, the undersigned finds that the records cited by the ALJ do contain relevant evidence adequate to support his conclusion regarding Fischer displaying appropriate judgment and insight when compliant with her medications. The ALJ also did correctly observe that Fischer was always cooperative during examinations. (*Id.* at 1024-25, 1030-32, 1050-52, 1057-58, 1075, 1083, 1142-44, 1150-51, 1162-63.)

Nonetheless, an examination of the above records illustrates just how pervasively the issue of Fischer's compliance or noncompliance with her medications affected the ALJ's finding that her reported symptoms were not consistent with the record.  The ALJ mined the various mental health treatment records for notations regarding compliance prior to his penultimate comparison of the various exam findings.  An examination of the ALJ's decision leaves the undersigned with little to support the ALJ's credibility finding regarding the consistency of Fischer's symptoms with the record that is not infected by the issue of noncompliance.  As the Sixth Circuit has explained, "[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989).  The ALJ's failure to explicitly inquire into the reasons for Fischer's noncompliance appears particularly significant given that is essentially the sole basis for his credibility determination.  Accordingly, given the centrality of the issue of noncompliance to the ALJ's determination, the undersigned cannot find that the ALJ's failure to explicitly discuss and/or inquire into Fischer's reasons for that noncompliance in his decision is harmless error.  The undersigned recommends that the ALJ's decision be reversed and that this matter be remanded to the Commissioner for further consideration of the reasons behind Fischer's noncompliance with her medications.

### 2. Medication Side Effects

Fischer also contended that the ALJ improperly failed to consider the side effects of her medications in formulating his RFC. (DN 12, at PageID # 1283.) "The type, dosage, effectiveness, and side effects of any medication [a claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms" is one relevant consideration in an ALJ's assessment of the intensity and persistence of a claimant's symptoms and how those symptoms limit his or her capacity for work. 20 C.F.R. § 416.929(c)(1), (c)(3)(iv); *see Wilson v. Comm'r of Soc. Sec.*, 783 F. App'x 489, 504

(6th Cir. 2019) ("The side effects of any medication taken to alleviate pain or other symptoms are relevant to determining the extent to which a claimant's pain and other symptoms limit her capacity for work."). Fischer emphasized that the administrative record supports that she developed tardive dyskinesia and akathisia as a result of her medications. (DN 12, at PageID # 1282-83.) While she cited to records supporting her diagnosis of tardive dyskinesia, she provided no citations to support that it caused any particular functional limitations that are inconsistent with the ALJ's RFC. Further, the absence of any explicit discussion of tardive dyskinesia from the ALJ's decision does not automatically indicate that the ALJ failed to consider the same as required by the regulations. The undersigned finds Fischer's argument regarding the ALJ's failure to discuss her tardive dyskinesia to be without merit.

As to her argument regarding akathisia, her only supporting citation is to an October 19, 2018, medical record she presented to the Appeals Council that does not appear to have been presented to the ALJ. (R. at 56-57.) In its September 26, 2019, letter, the Appeals Council noted that though it had received more evidence, it "found no reason under [its] rules to reopen and change the [ALJ's] decision." (*Id.* at 1.) Pursuant to well-established Sixth Circuit precedent, this Court's review is limited to the evidence that was in the administrative record when the ALJ rendered his decision. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Accordingly, the undersigned finds that Fisher's claim regarding akathisia is unreviewable by this Court.[5]

---

[5] Fischer did not argue or make the required showing that the new evidence regarding akathisia was cause for a sentence-six remand, and the undersigned will not make such an argument on her behalf. *See Cline*, 96 F.3d at 148 ("The district court can, however, remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding.").

### 3. APRN Stodghill's Opinion

Fischer also argued the ALJ failed to properly evaluate APRN Stodghill's "other source" opinion by not discussing the factors relating to his consideration of her assessment. (DN 12, at PageID # 1284.) The ALJ assigned APRN Stodghill's opinion "even less weight" than that of Fatin T. Nahi, M.B. Ch.B., whose opinion was attributed "very little weight." (R. at 283.) The ALJ stated that while APRN Stodghill "predicated her opinion on the premise that the claimant had not used drugs or alcohol for about six years," "the medical record strongly contradict[ed] th[at] assertion of sobriety." *Id.* Fischer contended the ALJ should have discussed the factors related to his consideration of APRN Stodghill's opinion "so as to provide some basis for why he was rejecting the opinion." (DN 12, at PageID # 1284 (quoting *Cruse v. Comm'r. of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007))).

In making his RFC finding, the ALJ must assign weight to the medical source statements in the record and consider the descriptions and observations of the claimant's limitations as a result of any impairments from the claimant and the claimant's family and friends. 20 C.F.R. § 416.945(a)(3); 20 C.F.R. § 416.927(c) (2020). The source of a medical opinion dictates the process by which the ALJ gives it weight. *Gayheart*, 710 F.3d at 376. APRNs are not considered "acceptable medical sources" within the meaning of 20 C.F.R § 416.913(a) but rather are considered "other sources" pursuant to 20 C.F.R. § 416.913(d). 20 C.F.R. § 416.913(a), (d) (2016); *Cruse*, 502 F.3d at 541. An ALJ is not required to give controlling weight or state the reasons he failed to give controlling weight to the opinion of an "other source." *See Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 399 (6th Cir. 2014). However, an ALJ must consider "other source" opinions and generally should explain the weight given to those opinions. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (quoting SSR 06-3p, 71 Fed. Reg.

14

45,593, 45,595 (Aug. 9, 2006) (rescinded as to all claims filed on or after March 27, 2017 by Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15,263 (March 27, 2017))). "In evaluating such an opinion, the ALJ should consider the length of the treating relationship, the consistency of the opinion with other evidence, and how well the source explains the opinion." *McNamara v. Comm'r of Soc. Sec.*, 623 F. App'x 308, 309 (6th Cir. 2015) (citing *Cruse*, 502 F.3d at 541).

The undersigned finds that the ALJ did not err by failing to explicitly discuss factors relating to his treatment of APRN Stodghill's "other source" opinion. The ALJ's opinion did explicitly state the weight he ascribed to APRN Stodghill's opinion and, though he did not reference the factor explicitly, his comments about Stodghill's opinion demonstrate that the weight was based on "the consistency of the opinion with other evidence," which is one of the factors for his consideration. *See McNamara*, 623 F. App'x at 309; SSR 06-03p, 71 Fed. Reg. at 45,595 (noting that the factors in 20 C.F.R. § 416.927(d) may be applied to consideration of "other source opinions"). Accordingly, the ALJ's opinion gave a sufficient explanation of his reasoning for the Court to assess the same.

Fischer also argued that the ALJ's conclusion that APRN Stodghill's assertion regarding Fischer's drug and alcohol use was inconsistent with the record was unsupported by substantial evidence. (DN 12, at PageID # 1286.) The ALJ cited to three records in support of his conclusion: a December 28, 2017, treatment note by APRN Chole Ruth that Fischer's fiancé called the office and reported that he "[wa]s afraid [Fischer] [wa]s back on drugs again"; a May 16, 2018, office visit record during which Fischer admitted that she "last used crack 1 week ago"; an April 19, 2018, office visit in which a drug screen of Fischer's urine was positive for cocaine; and a June 27, 2018, record noting that Fischer reported being "sober from cocaine 1 month" and "denie[d]

15

ETOH or illicit drug use." (R. at 1011, 1142, 1145, 1155.) Fischer correctly observed that all three records the ALJ relied upon to criticize Stodghill's opinion for failure to consider "the claimant's substance" abuse are dated *after* Stodghill's January 9, 2017, opinion. (*Id.* at 996-1001.) However, this fact alone does not invalidate the ALJ's reasoning as it was proper for him to point to evidence in the record dated after Stodghill's opinion that called into question her opinion. Further, the fact that Fischer had previously been addicted to cocaine from age nineteen until her incarceration is well-documented in records dated prior to the issuance of Stodghill's opinion, including Stodghill's own treatment notes. (*Id.* at 560-61, 840, 843, 875, 1081.)

Fischer also contends that the ALJ was mistaken in characterizing APRN Stodghill's opinion as having been based on Fischer's sobriety. (DN 12, at PageID # 1285.) In response to a question on the "Mental Medical Source Statement" form she completed, APRN Stodghill indicated that "no" "alcohol or substance abuse [did not] contribute to any of [Fischer's] limitations." (R. at 1001.) APRN Stodghill then noted, "Patient has not used drugs or ETOH in about 6 years." (*Id.*) Fischer emphasized the number of other findings APRN Stodghill made about her conditions and limitations that the ALJ did not discuss in his opinion and argued that "[t]he ALJ erred in not considering the consistency of APRN Stodghill's opinion with the treatment reports of record." (DN 12, at PageID # 1285.) The ALJ emphasized that the medical records contradicted the sobriety that factored into Stodghill's opinion about Fischer's limitations. He noted elsewhere in his opinion the changes in Fischer's memory, concentration, judgment and insight when she was under the influence of illegal drugs and emphasized that her mental abilities when abstinent were such that she was capable of the functional limitations described in his RFC determination. (R. at 282-83.) In particular, the ALJ relied on the opinions of the state agency physicians in support of his conclusion. (*Id.*) The state agency physicians found Fischer to have

16

a higher level of functioning than did Stodghill and though their opinions noted that she had a history of cocaine abuse, their opinions noted that the same was "in remission" after her incarceration. (*Id.* at 324-36, 338-50.) Accordingly, the undersigned finds that the ALJ's treatment of APRN Stodghill's opinion was supported by substantial evidence including later treatment records regarding her mental functioning while under the influence of illegal drugs and the state agency physicians' opinions.

### III. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **REVERSED** and that this matter be **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner to conduct additional proceedings to remedy the above-identified defects in the original proceedings.

*[Signature]*

Colin H Lindsay, Magistrate Judge
United States District Court

cc:  Counsel of record
    February 8, 2021

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Civ. P. 72(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).